UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **ALEXANDER HARRIS RUTLEDGE,**     ) | |
|                                 ) | |
|     **Plaintiff,**                      ) | |
|                                 ) | |
| **v.**                                      ) | **CAUSE NO.  1:21-cv-00389-SLC** |
|                                 ) | |
| **COMMISSIONER OF SOCIAL**    ) | |
| **SECURITY,** *sued as Kilolo Kijakazi,*  ) | |
| *Acting Commissioner of Social Security*  ) | |
| *Administration***,**                          ) | |
|                                 ) | |
|     **Defendant.**                     ) | |

## OPINION AND ORDER

Plaintiff Alexander Harris Rutledge appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be affirmed.

### I. FACTUAL AND PROCEDURAL HISTORY

Rutledge applied for benefits on November 6, 2019, alleging disability beginning June 15, 2018. (ECF 10 Administrative Record ("AR") 15, 198-204). Rutledge's claim for SSI was denied initially and upon reconsideration. (AR 98-118). After a timely request (AR 140-42), a hearing was held on March 31, 2021, before administrative law judge ("ALJ") Genevieve Adamo, at which Rutledge, represented by counsel, and a vocational expert testified. (AR 32-69). On June 2, 2021, the ALJ rendered an unfavorable decision to Rutledge, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (AR 15-28). Rutledge's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Rutledge filed a complaint with this Court in October 2021, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Rutledge alleges that the ALJ: (1) erred in analyzing medical opinion evidence, (2) erred in evaluating his ability to interact with others, and (3) erred in failing to examine his work history or his ability to work full time. (ECF 16 at 8-19).

On the date of the ALJ's decision, Rutledge was thirty-one years old (AR 198), had a high school education with some special education classes (AR 216), and had no past relevant work (AR 26). However, the ALJ found jobs that exist in significant numbers in the national economy that Rutledge could perform. (*Id.*). In his application, Rutledge alleged disability due to a bipolar disorder and Asperger's-type autism. (AR 215).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920. "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

*B. The Commissioner's Final Decision*

On June 2, 2021, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-28). At step one, the ALJ found that while Rutledge had worked after November 6, 2019, his application date, there was insufficient information about whether such work activity constituted

---

[1] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks he can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 416.920(e).

3

substantial gainful activity, and thus the ALJ proceeded to step two. (AR 18). At step two, the ALJ found that Rutledge had the following severe impairments: schizoaffective disorder – bipolar type; generalized anxiety disorder; and autism spectrum disorder. (AR 19). The ALJ also found that Rutledge had the non-severe impairment of obesity. (*Id.*).

At step three, the ALJ concluded that Rutledge did not have an impairment or combination of impairments severe enough to meet or equal a listing. (*Id.*). Before proceeding to step four, the ALJ assigned Rutledge the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform work requiring simple instructions and routine, repetitive tasks, defined as tasks and instructions that can be learned through short demonstration up to and including one month; cannot perform work requiring a specific production rate, such as assembly-line work; can meet production requirements that allow a flexible and goal oriented pace; can maintain the focus, persistence, concentration, pace and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods; can make only simple work-related decisions; could respond appropriately to predictable, routine changes in the workplace; could tolerate only brief and superficial interaction with supervisors, coworkers, and the general public, which is defined as occasional and casual contact with no prolonged conversations, but contact with supervisors still includes what is necessary for general instruction, task completion, or training; cannot perform tandem tasks.

(AR 22). The ALJ found at step four that Rutledge had no past relevant work. (AR 26). However, the ALJ found jobs that exist in significant numbers in the national economy that Rutledge could perform despite the limitations caused by his impairments. (*Id.*). Therefore, Rutledge's application for SSI was denied. (AR 28).

## C. Medical Opinion Evidence

Rutledge alleges that the ALJ failed to properly analyze and consider the opinion of the psychological consultative examiner, Dan L. Boen, Ph.D, HSPP. (ECF 16 at 8-10). For the following reasons, Rutledge's arguments are not persuasive.

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). This so called "treating physician rule,"

however, was eliminated for claims–such as Rutledge's–filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. §§ 404.1520c [and] 416.920c (2017)." *Id.* The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather she evaluates the persuasiveness of medical opinions. 20 C.F.R. § 416.920c. When considering the persuasiveness of any medical opinion, an ALJ must now consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. *Id.*; *see Inmam v. Saul*, No. 1:20-CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021).

"The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination." *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

An ALJ cannot "cherry-pick" evidence supporting one outcome, while failing to address evidence that would undercut her determination. *Etherington*, 2021 WL 414556, at *4; *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). In other words, while the ALJ is free to weigh conflicting opinion evidence, *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004), "[she] may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). At the same time, "[w]hen an ALJ denies benefits, [she] must build an accurate and logical bridge from the evidence to [her] conclusion, and [she] may not 'play doctor' by using [her] own

5

lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted).

Dr. Boen conducted a consultative examination on February 25, 2020. (AR 297). Dr. Boen noted that Rutledge had only been on mental health medication (Latuda) for two weeks, and that it was not yet helping. (*Id.*). Dr. Boen found that Rutledge was not completely oriented to time, place, person, and situation. (AR 300). Rutledge presented as angry, and his thought form contained suicidal and paranoid ideation. (AR 300-01). Dr. Boen found Rutledge's concentration, immediate recall, and judgment to be moderately below normal; his short-term memory to be mildly below normal; and his long-term memory, fund of information, level of intelligence, and level of insight to be normal. (AR 301). In his narrative opinion, Dr. Boen opined that Rutledge would not have trouble understanding or remembering what he was asked to do on a job. (*Id.*). However, he opined that Rutledge would have difficulty concentrating on the job, staying on task, and getting along with a boss and coworkers. (*Id.*).

The ALJ noted that Dr. Boen did not support his opinion with an explanation that related back to his own clinical findings, but found that his assessment was generally consistent with Rutledge's performance during the mental status examination and with the statements provided to Dr. Boen the day of the examination. (AR 23). The ALJ then found Dr. Boen's opinion to be more persuasive than the state agency medical consultants' opinions. (*Id.*). The ALJ also found that limiting Rutledge to simple, routine tasks in an environment where social stressors that would aggravate his symptoms were minimized, Rutledge's hallucinations and social limitations would not result in excessive off-task behavior during the workday. (AR 24).

Rutledge asserts that the ALJ erred by finding that limiting him to simple tasks and limiting social stressors would minimize his hallucinations. (ECF 16 at 9). Specifically, he asserts that the ALJ did not build the requisite logical bridge from Dr. Boen's opinion to the RFC findings. (*Id.*). However, the ALJ discussed Rutledge's testimony that his auditory hallucinations and panic attacks distract him from work. (AR 25). The ALJ specifically noted that Rutledge testified to having panic attacks "every couple of months or so," and that he did not consistently complain about panic attacks on a monthly basis to his doctors. (*Id.*). The ALJ

6

also noted that the state agency medical consultants provided limitations to social stressors in order to minimize Rutledge's symptoms, and indicated that the RFC limitations were informed by the state agency medical consultants' opinions on this particular issue. (*Id.*). Moreover, although Dr. Boen noted hallucinations, the medical record indicates that Rutledge's hallucinations were greatly reduced with treatment, and that he was doing well at a job with limited social interactions. (AR 302, 309, 325). The ALJ properly supported his RFC determination with substantial evidence, and Rutledge has provided no evidence to contradict the ALJ's findings.

Indeed, the medical records that Rutledge produced in support of his application are rather sparse, consisting of approximately 76 pages and spanning just ten months---from February 2020, the month in which Dr. Boen evaluated him, to November 2020, when he was working twenty hours a week. (AR 272-348). Rutledge was still performing this same job at the time of the hearing five months later. (AR 25, 39-40). As already explained *supra*, it is "[t]he claimant [who] bears the burden of producing medical evidence that supports [his] claims of disability." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). "That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." *Id.*

Rutledge also asserts that the ALJ erred in assessing his ability to interact with others by failing to rely on Dr. Boen's opinion that he would have difficulty getting along with coworkers and a boss. (ECF 16 at 10-12). Rutledge primarily relies on medical evidence from February and March 2020 during which time he was taking medication that did not provide him any symptom relief or in doses too low to provide relief. (*See id.* at 11 (citing AR 272-73, 297, 307, 327)). The ALJ discussed that Rutledge's symptoms greatly improved after changing his medication to Rexulti and increasing the dosage in March 2020. (AR 24; *see* AR 327-31). In April 2020, Rutledge stated that the medication was working well for him, and the ALJ noted that his hallucinations drastically reduced, were quite tolerable, and "it was easy for him to tell the difference between reality and non-reality." (AR 24; *see* AR 317-26). Rutledge's medication was adjusted again, and in May 2020 he told his treatment provider that his medication dose was at a "sweet spot" and he was pleased with his treatment progress. (AR 25; *see* AR 312-16). The ALJ noted that he struggled in August and

7

October 2020 with depressive symptoms, but he also stated that his hallucinations had drastically reduced. (AR 25; *see* AR 307-11). In November 2020, he was working part time at a hospital. (AR 25; *see* AR 302). The ALJ noted that at the November 2020 appointment, Rutledge reported that his mood continued to improve, that he "was doing pretty well overall," and that his dark thoughts occurred much less frequently than before. (AR 25; *see* AR 302-06).

      Dr. Boen opined that Rutledge would have difficulty in getting along with coworkers and with a boss, but he did not provide any specific limitations or explain to what extent Rutledge would struggle. (AR 301). The ALJ provided for Rutledge's difficulties in interacting with others and his ability to perform part-time work that did not include much interaction with others by limiting him to only brief and superficial interaction with supervisors, coworkers, and the general public. (AR 21-22). The ALJ supported her finding with sufficient evidence, noting both that Rutledge's symptoms improved with treatment and that he performed part-time work that did not require interaction with people. (AR 21-25). Rutledge argues that there is no evidence that his ability to interact with others improved with treatment, but the ALJ cites to several treatment notes that show improvement. (*Id.*). Rutledge is asking this Court to reweigh evidence, which it cannot do. *See Clifford*, 227 F.3d at 869. The ALJ thoroughly discussed the evidence that both supports and contradicts the RFC findings and explained the decision, supporting it with sufficient evidence.

      Rutledge also asserts that the ALJ erred by failing to provide good reasons for rejecting the opinion of nurse practitioner Jenna Shock. (ECF 16 at 15-18). Rutledge takes issue with the ALJ choosing not to rely on a statement made by Ms. Shock in a February 2020 treatment note regarding her opinion that he was unable to maintain employment due to mental health symptoms. (*Id.*). However, as the ALJ repeatedly noted, Rutledge's mental health symptoms greatly improved after he started treatment and found the correct dosage of medication. (AR 21-25). Moreover, Ms. Shock did not provide a medical opinion, despite Rutledge's arguments to the contrary. Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Ms. Shock's treatment notes do not

8

qualify as medical opinions, as they do not explain what Rutledge can do despite his impairments, nor do they include any indication of his mental or physical restrictions. Therefore, the ALJ was not required to go through the steps and analysis required of medical opinions for Ms. Shock's treatment notes. The ALJ fully discussed and analyzed Ms. Shock's treatment notes, and the ALJ was not required to provide any medical opinion analysis of the treatment notes.

*D. Work History*

Rutledge asserts that the ALJ erred in failing to consider his work history and his ability to work a full-time job. (ECF 16 at 12-14). Rutledge relies on *Soga v. Astrue* to support his opinion, wherein the court held that the ALJ was in error for failing to discuss a claimant's ability to work full-time when there was no full-time employment in the past and the opinions in the record did not specifically discuss the claimant's ability to work full time. No. 2:11-CV-90, 2012 WL 1085663, at *7 (N.D. Ind. Mar. 29, 2012). However, in *Soga*, the court specifically noted that the claimant had only worked part-time jobs in the past and had significant difficulty with all of them. *Id.* Here, the ALJ discussed Rutledge's employment history and noted that he was able to hold two different part-time jobs once his symptoms were improved through treatment. (AR 24-25). This differs from *Soga,* as Rutledge has had success with his part-time jobs. While Rutledge testified at the hearing that he stopped working at Speedway due to his social limitations, he reported to his mental health provider that he quit working at Speedway due to a back injury. (*Id.*); *see Diaz v. Astrue*, 685 F. Supp. 2d 825, 837 (N.D. Ill. Feb. 2, 2010) (discounting the credibility of the claimant's symptom testimony due to inconsistencies between such testimony and the claimant's statements to treatment providers). The ALJ also relied on the November 2020 treatment note, where Rutledge stated he enjoys his work at the hospital. (AR 25). Rutledge testified in March 2021 that he was still working part time at the hospital. (*Id.*). The ALJ noted that although he had been reprimanded and occasionally needs to calm down in a bathroom due to anxiety, he believes he stays on task. (*Id.*). The ALJ properly considered Rutledge's prior part-time work and created an RFC based partially on his success with his job at the hospital.

In sum, none of Rutledge's arguments reasonably support a finding that the ALJ failed to support his decision with substantial evidence. "It is axiomatic that the claimant bears the burden of supplying adequate

records and evidence to prove [his] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). As stated earlier, the medical records Rutledge produced in support of his disability application consist of approximately 76 pages and span just ten months—from his emergency room visit in February 2020 when he was first evaluated by nurse Schock and subsequently examined by Dr. Boen, to November 2020, at which time Rutledge was doing well on medications and working twenty hours per week. (AR 272-348). He was still performing this job five months later on the date of the hearing, March 31, 2021. (AR 25, 39-40). On this record, Rutledge has failed to carry his burden of establishing mental limitations for a continuous twelve-month period of greater functional severity than accounted for in the RFC. *See* 42 U.S.C. 1382c(a)(3)(A); *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing 20 C.F.R. § 416.912(c)). Consequently, the Commissioner's final decision will be AFFIRMED.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Rutledge.

SO ORDERED.

Entered this 7th day of November 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
